**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ALEXANDER DEFELICE, | : | |
| Petitioner, | : | CIVIL ACTION NO. |
| | : | 3:12-CV-699 (JCH) |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | FEBRUARY 28, 2013 |
| Respondent. | : | |

**RULING RE: PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT
SENTENCE (Doc. No. 1), PETITIONER'S MOTION FOR LEAVE TO FILE A
SUPPORTING MEMORANDUM OF LAW (Doc. No. 4) and PETITIONER'S MOTION
TO AMEND (Doc. No. 8)**

**I.     INTRODUCTION**

Pursuant to section 2255 of title 28 of the United States Code ("2255"), petitioner

Alexander DeFelice brings this Motion to Vacate, Set Aside, or Correct Sentence (Doc.

No. 1) based upon his trial counsel's alleged failure to appeal his sentence as requested

by DeFelice following sentencing.  DeFelice initially brought this petition pro se, but

counsel was subsequently appointed for him.  This Motion is identical to a Motion filed

in relation to a second, related criminal case that was resolved at sentencing

simultaneously. [1]  The court held an evidentiary hearing on the claims presented in the

2255 Motion on January 22, 2013.  For the following reasons, the court **grants** the

Motion.  The court also **terminates as moot** DeFelice's Motion for Leave to File a

Supporting Memorandum of Law (Doc. No. 4).  In light of the court's decision as to the

2255 Motion, the court further **terminates as moot** DeFelice's Motion for Leave to

Amend his 2255 Motion (Doc. No. 8).

---

[1] This case has been consolidated with case number 3:12-CV-727 (JCH).  See Doc. No. 11.

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a prisoner in custody, sentenced by a federal court, may petition the court which imposed the sentence to vacate, set aside, or correct the sentence.  28 U.S.C. § 2255.  However, "[b]ecause requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack."  Ciak v. United States, 59 F.3d 296, 301 (2d Cir. 1995) (internal citations omitted) (abrogated on other grounds by Mickens v. Taylor, 535 U.S. 162 (2002)).  "As a general rule, relief is only available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  Napoli v. United States, 32 F.3d 31, 35 (2d Cir. 1994) (internal citations omitted).

## III.    FACTUAL BACKGROUND

DeFelice was originally indicted in two related cases, 3:10-cr-68 (JCH) and 3:10-cr-44 (JCH).  In both of those cases, DeFelice was represented by the same attorney, Michael Hillis.  Following a jury trial in the 10-cr-68 case, DeFelice was found guilty of Counts 3, 4, 5, 6, and 7 of the Indictment, on charges mainly relating to the sale or transfer of firearms and explosive grenades to convicted felons.  In that case post-trial, DeFelice also pled guilty to Count 2 of that Indictment.[2]  DeFelice was sentenced to 120 months for Counts 2, 3, 4, 5, 6, and 7, and 60 months for Count 4, to run concurrently. In the 10-cr-44 case, DeFelice pled guilty to a single count of possession of a firearm by

---

[2] Count 1 of the Indictment in the 10-cr-68 case was dismissed upon motion by the government. See Doc. No. 266.

a convicted felon, for which he was sentenced to 120 months, to run concurrently with

the 10-cr-68 sentence.  The sentences were all below the applicable sentencing

guidelines range.  No direct appeal was filed in either case.

DeFelice is currently incarcerated at the Federal Correctional Institution in

Cumberland, Maryland.

DeFelice claims that he requested that his attorney file a notice of appeal as to

his sentences in both criminal cases.  His attorney asserts that no such request was

ever made, and that both parties agreed to not file such notices.

## IV.   DISCUSSION

The sole issue before this court is whether or not DeFelice received ineffective

assistance of counsel based on the non-filing of the notices of appeal.  DeFelice asserts

that he wanted Attorney Hillis to file the notices and believed that they would be filed.

The Government argues that Attorney Hillis did not provide ineffective assistance of

counsel because Attorney Hillis and DeFelice discussed the advisability of appealing

the sentence and together decided not to appeal.

When raising a claim of ineffective assistance of counsel, the petitioner must

satisfy a two-part test.  First, he must demonstrate that his counsel's performance "fell

below an objective standard of reasonableness." Strickland v. Washington, 466 U.S.

668, 687-88 (1984); see also United States v. Abad, 514 F.3d 271, 275 (2d Cir. 2008).

Second, he must show that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." Id. at

688.  A petitioner "bears the burden of proving that counsel's representation was

unreasonable under the prevailing professional norms." Kimmelman v. Morrison, 477

U.S. 365, 381 (1986).  The reasonableness of counsel's performance is to be viewed from the perspective of counsel, and "the standard of review is highly deferential."  Id.

Both parties agree that the conduct alleged here -- a failure by counsel to file a notice of appeal after being asked to do so by DeFelice -- would satisfy the ineffective assistance of counsel standard.  See Petitioner's Motion for Relief Under 28 U.S.C. § 2255 ("Pet'rs' 2255 Motion") (Doc. No. 1) at 3; Respondent's Response to Order to Show Cause ("Resp't's Response") (Doc. No. 4) at 8.  In Roe v. Flores-Ortega, the Supreme Court observed that, "We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."  Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000).  The court continued:

> [A] defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice.  Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes.  At the other end of the spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently."

Id. (emphasis in original).

Sometimes, however, the circumstances surrounding a failure to file an appeal are not as clear-cut as an unambiguous request for, or repudiation of, a notice of appeal.  The Flores-Ortega court squarely considered the issue of how courts should respond to claims in circumstances in which the defendant's preferences are not clearly conveyed one way or the other.  With regard to the first prong of Strickland, in such scenarios, courts must first ask whether counsel "consulted" with the defendant about the appeal.  Id. at 478.  This, of course, leads to two related questions: what does it

4

mean to consult with a defendant, and when are such consultations required.  The

Flores-Ortega court defined "consult" to mean, "advising the defendant about the

advantages and disadvantages of taking and appeal, and making a reasonable effort to

discover the defendant's wishes."  Id.  Next, turning to the question of when such

consultations are necessary, the court held, "counsel has a constitutionally imposed

duty to consult with the defendant about an appeal when there is reason to think either

(1) that a rational defendant would want to appeal (for example, because there are

nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably

demonstrated to counsel that he was interested in appealing."  Id. at 480.  Making this

determination involves considering all of the relevant facts and factors present, including

whether the conviction followed a guilty plea or a trial, and whether the defendant

received his bargained-for sentence.  Id. Notably, the court declined to impose a per se

requirement of consultation in all instances.  Id.

    Next, in considering the Strickland prejudice prong, the Flores-Ortega court held

that, "where counsel's error leads to the 'forfeiture of a proceeding itself,' prejudice will

be presumed."  Campusano v. U.S., 442 F.3d 770, 773 (2d Cir. 2006) (quoting Flores-

Ortega, 528 U.S. at 483-84).  "'When counsel fails to file a requested appeal, a

defendant is entitled to a new appeal without showing that his appeal would likely have

had merit.'"  Id. (quoting Flores-Ortega, 528 U.S. at 483-84) (internal quotation omitted).

In cases where there was no direct request for an appeal that was not acted upon, the

Flores-Ortega court outlines a separate inquiry for determining prejudice.  The court

held, "[T]o show prejudice in these circumstances, a defendant must demonstrate that

there is a reasonable probability that, but for counsel's deficient failure to consult with

him about an appeal, he would have timely appealed." <u>Flores-Ortega</u>, 528 U.S. at 484.

Determining whether there was a reasonable probability that the defendant would have

appealed "will turn on the facts of a particular case." <u>Id</u>. at 485.

The <u>Flores-Ortega</u> court outlined a few examples of the sorts of evidence that

would be relevant to such an inquiry, chief among them whether there were non-

frivolous grounds for appeal or whether the defendant promptly expressed a desire to

appeal. <u>Id</u>. "To prove deficient performance, a defendant can rely on evidence that he

sufficiently demonstrated to counsel his interest in an appeal.  But such evidence alone

is insufficient to establish that, had the defendant received reasonable advice from

counsel about the appeal, he would have instructed his counsel to file an appeal." <u>Id</u>. at

486.  However, a failure to show non-frivolous grounds for an appeal is not necessary

for such a demonstration.  "[I]t is unfair to require an indigent, perhaps <u>pro se</u>, defendant

to demonstrate that his hypothetical appeal might have had merit before any advocate

has ever reviewed the record in his case in search of potentially meritorious grounds for

appeal.  Rather, we require the defendant to demonstrate that, but for counsel's

deficient conduct, he would have appealed." <u>Id</u>.

The court now turns to the somewhat opaque facts of this case.  The court held

an evidentiary hearing on the matter and heard testimony from DeFelice, DeFelice's

wife, and Attorney Hillis.

The evidence presented in the hearing suggests that the context for

understanding the nature of the discussions that took place between DeFelice and

Attorney Hillis regarding an appeal begins with the date of the jury's verdict against him

in his criminal trial.  Both DeFelice and Attorney Hillis testified that, at the time of

conviction, and in response to a question from the court regarding a possible appeal, Attorney Hillis stated that he intended to appeal the conviction, ostensibly because of the strength of the entrapment defense Attorney Hillis presented at trial.  It does not appear that any substantive discussions between DeFelice and Attorney Hillis regarding a possible appeal took place between the date of the jury verdict and the date of sentencing.

DeFelice and Attorney Hillis offer differing accounts, however, of what actually took place on the day of sentencing.  Attorney Hillis testified that, prior to sentencing, he and DeFelice had a discussion -- in what Attorney Hillis described as generalized terms -- that a sentence of ten years on the charges against him would constitute a very favorable result and that an appeal of such a sentence would be unwise given the eventual possibility of a longer sentence.  He testified that he understood DeFelice to have understood this recommendation and to agree with his conclusion that, if DeFelice received a ten year sentence, then he would not appeal.  Attorney Hillis further testified that, immediately after the sentence was handed down, he expressed approval to DeFelice about the length of the sentence.  In a meeting following the sentencing, Attorney Hillis testified that he opened the conversation with an assertion that the sentence received was a good one, and that they should not seek to challenge it. Attorney Hillis further testified that DeFelice understood the advice not to appeal to be correct, although it was not clear how directly DeFelice expressed approval of this strategic decision.  Specifically, Attorney Hillis testified, in response to a question concerning how DeFelice expressed this approval, "Alex is very bright and to keep him focused on one thing at one time is always difficult because he's moving on.  He moves

on to the next thought.  So to the best of my recollection, I understood him to have

agreed."  See Transcript of Evidentiary Hearing ("Tr.") (Doc. No. 15) at 47.  Attorney

Hillis further elaborated, in response to a question about whether there was sufficient

time to discuss the decision with DeFelice, "You never have enough time but that's one

of the issues dealing with Alex.  He jumps around.  He goes from point to point but

clearly I understood it that he wasn't going to appeal the sentence because it was as

low as it probably could have been."  Id.

Attorney Hillis further testified that, in the context of these conversations,

DeFelice strongly represented to him that he did not wish to file an appeal.  The

following exchange took place between Attorney Hillis and DeFelice's counsel on cross-

examination:

> Q:  Is it your testimony that Alex was adamant about not filing an appeal?
>
> A:  Right.  That was after we had both [sic] were pleased with the fact he had gotten 10 years when the Court could have given him more than 188 if the government had pushed it or if the Court thought the sentence should have been greater.
>
> Q:  Would it be fair to say that Alex represented to you that he was adamant about not jeopardizing his nonguideline sentence?
>
> A: He was clearly adamant about not jeopardizing the 120 months.  To the other, I don't remember.  I don't think so.
>
> Q:  Now if he said to you if there's grounds to appeal, file an appeal, what would you have done?
>
> A: We would have talked about it again because even if there were grounds for appeal, you are going to effect [sic] your sentence if you are going to try.  You couldn't ensure that you were going to get the 120 months.  There was clearly no ground to appeal the sentence.

Id. at 60-61.

DeFelice offered a different account of these conversations.  DeFelice testified that at the meeting with Attorney Hillis prior to sentencing, the two discussed when they might consider an appeal.  DeFelice testified that they decided that any sentence over eight years would be appealed.  DeFelice further testified that following sentencing, he and Attorney Hillis again met to discuss a possible appeal.  DeFelice testified:

Q:  Can you please tell the Court about that conversation?

A: Mr. Kopel had asked for a sentence at the high end of guidelines 188 months. The judge found justification gave me 120 months under the low end of my guidelines.  I told Mike specifically don't do anything that would, excuse my French, piss the judge off, look like I was throwing it in the judge's face for doing me, for lack of a better term, a favor or giving me 120 months.  If we had solid ground to stand to fight anything, I could get it lower get it overturned, do so. During that time I had Ms. Morales, Ms. Morales slamming on the door.  It was late in the day, opening the door in the lockup, pulling me out, telling me we're out.  We have to go, call.  So it was a conversation that was left half open, half up in the air.

Q:  How long did that conversation take place?

A:  Maybe two and a half minutes, three.

Q:  What was Attorney Hillis' response to your statement?

A:  Not 100 percent sure.  Like I said, I was being pulled out of the room, having the door slammed on me.  Within a 15-minute-time period, I got 120 months away my wife, had a mental emotional breakdown in the courtroom.  I have an officer from Rhode Island slamming on the door with three days no sleep. Slamming on the door, we have to go.  It was kind of a confusing moment.

Q:  In your mind, was that you requesting your lawyer to file an appeal?

A:  Yes, ma'am.

Id. at 9-10.  DeFelice also testified that he tried to get in contact with Attorney Hillis by phone following this encounter, and when that proved unsuccessful enlisted his wife to phone Attorney Hillis as well.  He also testified that he attempted to send a letter to

Attorney Hillis.  Attorney Hillis testified that he reviewed phone records and never received these calls, and never received a letter regarding an appeal.

Based on presentation and demeanor at the evidentiary hearing, along with corroborating factors from Attorney Hillis' testimony, the court generally credits DeFelice's testimony, particularly his understanding that a possibility for appeal remained even though he was generally satisfied with the 120 month sentence. However, it is equally clear that DeFelice has failed to show that he directly requested an appeal, and that this appeal was ignored.  In other words, DeFelice's actions were not the kind of "specific instructions" to file an appeal contemplated by Flores-Ortega when the court observed that it had long held that failure to follow such instructions constituted professionally unreasonable representation.

Instead, the court is in the murky scenario considered by the remainder of the Flores-Ortega decision, which governs how courts should evaluate ineffective assistance claims in the context of a failure to file a notice of appeal.

Turning to the first prong of the Strickland standard as explained by Flores-Ortega, the court asks whether Attorney Hillis had a duty to consult with DeFelice, and whether such a consultation, as defined by Flores-Ortega, actually took place.  Flores-Ortega explained that, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480.  Here, DeFelice has offered no argument or evidence regarding a non-frivolous ground for appeal.  Further,

10

the court is sympathetic to Attorney Hillis' argument that, given DeFelice's below

guidelines sentence, there was, perhaps, less incentive to seek an appeal that could

result in a new trial and a new sentencing that could yield a longer sentence.

However, the court concludes that DeFelice has shown by a preponderance of

the evidence that he reasonably demonstrated to counsel that he was interested in

appealing.  Attorney Hillis stated in open court at the time of the jury verdict that he

intended to appeal and at no point repudiated that statement.  As for DeFelice himself,

the court has already credited his testimony that he was certainly discussing the

possibility of an appeal prior to sentencing and made statements indicating a conditional

willingness to pursue an appeal after his sentencing, in a meeting that was short and

interrupted by officers taking him back into detention.  This is more than enough to

reasonably demonstrate to counsel that he was interested in appealing.  See Sanchez

v. United States, No. 3:09cv1330, 2011 WL 1885348, *6 (D. Conn. 2011) (finding

petitioner had reasonably demonstrated to counsel that he was interested in appealing

because he had expressed to counsel disagreement with the government's statutory

and guidelines calculations and because the plea agreement contained no appellate

waiver).

The court does note that it lacks some of the ancillary, corroborating evidence

present in some other cases that could confirm DeFelice's intentions and meaning.

See, e.g., Grant v. United States, Nos. 05 Civ. 8994(RPP), 03 Cr. 725(RPP), 2007 WL

2469450, *8 (S.D.N.Y. Aug. 31, 2007) (finding insufficient demonstrated interest in

appealing where petitioner testified that his wife called counsel to inquire whether

petitioner could file a notice of appeal, petitioner had waived right to appeal, and

11

petitioner did not file a notice of appeal on his own).  Here, while DeFelice and his wife

testified that they called Attorney Hillis specifically to ask about pursuing an appeal,

there is no evidence that this call was ever received or that any message was left, and

the court will not infer from a mere call the demonstrated impression such a call would

have left with Attorney Hillis.  Despite these shortcomings, as stated above, DeFelice

has carried his burden in showing that he reasonably demonstrated an interest in

appealing, particularly where, as here, sentencing followed a trial and did not involve

waiver of appellate rights.  Accordingly, a consultation was required.

Concluding that a consultation was required, of course, does not end the inquiry.

The court next looks at whether a consultation actually took place.  According to Flores-

Ortega, "consult" means, "advising the defendant about the advantages and

disadvantages of taking and appeal, and making a reasonable effort to discover the

defendant's wishes." Flores-Ortega, 528 U.S. at 478.  While it is clear that some form of

discussion between Attorney Hillis and DeFelice took place both before and after

sentencing, it is clear that the discussion was not properly a "consultation" under Flores-

Ortega.  The court particularly notes Attorney Hillis' testimony regarding the nature of

the conversation between himself and DeFelice following sentencing, in which he states

that DeFelice's attention during the conversation wandered from topic to topic, and that

Attorney Hillis' determination of DeFelice's intentions hinged more on impression and

tone rather than a clear statement of understanding and acceptance from DeFelice.

Indeed, Attorney Hillis observed that, "Alex is very bright and to keep him focused on

one thing at one time is always difficult because he's moving on.  He moves to the next

thought." Tr. At 47.  He also noted that DeFelice "jumps around," a characteristic that

surely calls for careful attention from counsel to ensure that DeFelice fully understood the information being conveyed.  The conclusion that a full consultation did not in fact occur is further bolstered by DeFelice's testimony, which the court credits, that the post-sentencing conversation was short and, to a significant degree, left unresolved.  The conversation with Attorney Hillis was interrupted before it was completed.  While Attorney Hillis did not intentionally abbreviate the exchange, his actions were not a reasonable effort to discover DeFelice's wishes, particularly, as here, where sentencing followed a jury trial, not a plea, and involved no waiver of appeal rights.  See Stanton v. United States, 397 Fed.Appx. 548, 550 (11th Cir. 2010) ("Counsel's statement that there were no appealable issues without further explanation did not constitute adequate consultation."); Thompson v. United States, 504 F.3d 1203, 1206 (11th Cir. 2007) (finding inadequate consultation where petitioner expressed unhappiness with a sentence after the sentence was imposed, counsel told the petitioner he had a right to appeal but noted that he did not think the appeal would be worthwhile without explaining the reasoning, petitioner responded "fine," and the exchange lasted no more than five minutes).  Further, it is clear that discussion of potential sentencing outcomes before the actual sentencing is not an adequate substitute for a post-sentencing consultation.  See Sanchez, 2011 WL 1885348 at *6 ("[A]lthough Sanchez' attorney may have discussed with his client the likelihood of different sentencing outcomes before sentencing, there is no submitted evidence that Gulash ever consulted Sanchez concerning and appeal following sentencing, even though the plea agreement specifically permitted Sanchez to file such an appeal.  Those facts lead the court to conclude that Sanchez's attorney was

deficient when he failed to consult his client after Sanchez had reasonably demonstrated that he was interested in appealing his sentence.").

Next, the court turns to the prejudice prong.  The <u>Flores-Ortega</u> court explained, "to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed."  <u>Flores-Ortega</u>, 528 U.S. at 484.  This inquiry is somewhat similar to the inquiry as to whether a consultation is required and can rest in large part on reasonably demonstrating to counsel an interest in appeal.  For the reasons stated above when considering that question, the court finds DeFelice reasonably demonstrated to counsel his interest in appeal.  This is further bolstered by the fact that DeFelice's sentence followed trial, not a plea agreement, and that he could have reasonably assumed that Attorney Hillis' statement following the guilty verdict that he planned to appeal was still an accurate reflection of Attorney Hillis' intentions.  While DeFelice has not come forward with any non-frivolous grounds for appeal, such a demonstration is not necessary here, given the other facts present and the presumption of prejudice.  <u>See</u> <u>id</u>. at 486.  Accordingly, because he was denied an appeal altogether, DeFelice has satisfied the prejudice prong of <u>Flores-Ortega</u> and <u>Strickland</u>.

Accordingly, DeFelice has met his burden to prove his counsel's ineffectiveness for failing to file a notice of appeal on his behalf.  He is therefore entitled to a reentry of judgment, which will provide him an opportunity to file a notice of appeal with the Court of Appeals within 14 days of the judgment's reentry.  <u>See</u> <u>Sanchez</u>, 2011 WL 1885348 at *7.

14

## V.      CONCLUSION

For the foregoing reasons, the court **grants** Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 1).  The court further **terminates as moot** Petitioner's Motion for Leave to File a Supporting Memorandum of Law (Doc. No. 4).  In light of the court's Ruling, the court also **terminates as moot** Petitioner's Motion for Leave to Amend his 2255 Motion (Doc. No. 8).[3]  The Clerk is directed to vacate and subsequently reenter the court's Order of Judgment in this case.  DeFelice shall have fourteen days following reentry of that judgment to file the appropriate Notice of Appeal.

**SO ORDERED.**

Dated at New Haven, Connecticut this 28th day of February, 2013.


                                                    ___/s/ Janet C. Hall_____
                                                    Janet C. Hall
                                                    United States District Judge

---

[3] The court notes that DeFelice originally brought his 2255 Motion pro se and had only limited time to confer with counsel, once counsel was appointed, before counsel filed her supporting memorandum.  DeFelice filed his Motion for Leave to Amend in light of newly acquired information that may have added additional grounds that would support the granting of his 2255 Motion.  As this 2255 Motion has been granted, DeFelice may pursue those grounds on direct appeal.

15